IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MIA LONG, | ) | CASE NO. 1:18-CV-01407 |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | DEFENDANTS' MOTION FOR |
| CITY OF CLEVELAND, *et al.* | ) | SUMMARY JUDGMENT AND |
| | ) | ATTACHED MEMORANDUM IN |
| | ) | SUPPORT |
| Defendants. | ) | |
| | ) | |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.1(f), Defendants hereby respectfully move the court to enter summary judgment in their favor on all counts in Plaintiff's complaint. Grounds for the motion are more fully explained in the Memorandum in Support of this motion which is incorporated herein by reference and which demonstrates that there is no genuine dispute as to any material facts and the Defendants are entitled to judgment as a matter of law.

The motion is further supported by the following: 1) the deposition transcript for the deposition of Mia Long taken October 17, 2018, plus exhibits thereto (hereinafter "Tr".)  The unsworn declarations of the following people filed pursuant to 28 USC §1746: Jose Hernandez, Manager of Engineering Cleveland Division of Water (Appendix Exhibit 3); Frances Paster, Labor Relations Manager (Appendix Exhibit 2); Melinda Raimann Administrative Manager of the Cleveland Division of Water Department of Public Utilities (Appendix Exhibit 4); Karen M. Cooney (Appendix Exhibit 1); Hernando Harge Chief of Human Resources for the Department of Public Utilities which includes the Division of Water (Appendix Exhibit 5); Mark V. Webber, attorney (as to ministerial matters relating to service of discovery requests and receipt of

responses.) (Appendix Exhibit 6.) The requests for admissions were served July 10, 2018 and were not answered until September 12, 2018. (Tr. Exhibits 25 and 26. and Webber declaration paragraphs 3-4.) Therefore, since the admissions were not timely answered they are deemed admitted. The request for admissions contained a bold face warning that failure to answer them in a timely fashion would result in their being deemed admitted. The untimely answers that Plaintiff served over a month past due do not qualify as valid answers under Federal Rule of Civil Procedure 36.

Defendants further note that Defendant City of Cleveland Department of Public Utilities is not a proper party defendant because it is simply a division of the City of Cleveland which is a political subdivision. The Department of Public Utilities is not Sui Juris and should be dismissed. Instead, the real party in interest is the City of Cleveland. See *Richardson v. Grady, No. 77381, 2000 WL 1847588, at *2 (Ohio Ct. App. Dec. 18, 2000)* citing *Edmonds v. Dillin (N.D.Ohio 1980), 485 F.Supp. 722, 724.*

> BARBARA A. LANGHENRY (0038838)
> Director of Law
> By: /s/*Mark V. Webber*
> MARK V. WEBBER (0007544)
> Chief Assistant Director of Law
> TIFFANY FISCHBACH (0083348)
> Assistant Director of Law
> AMANDA BOUTTON (0093659)
> Assistant Director of Law
> City of Cleveland, Department of Law
> 601 Lakeside Avenue, Room 106
> Cleveland, Ohio  44114
> Tel:    (216) 664-2800
> Fax:    (216) 664-2663
> Email: MWebber@city.cleveland.oh.us
>        TFischbach@city.cleveland.oh.us
>        ABoutton@city.cleveland.oh.us
> Attorneys for Defendants

# TABLE OF CONTENTS

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ................................................... i, ii

TABLE OF AUTHORITIES ..................................................................................... v, vi

I.    STATEMENT OF THE ISSUES ..........................................................................1

II.   SUMMARY OF THE ARGUMENT .....................................................................1

III.  STATEMENT OF THE FACTS ..........................................................................2

    A. Plaintiff and Defendant Jose Hernandez (Hernandez) were engaged in a consensual and welcome relationship which terminated in July 2017 .......................................................2

    B.  Hernandez was not Plaintiff's Supervisor .........................................................3

    C.  On the morning of July 19, 2017, Plaintiff confronted Hernandez's secretary Karen Cooney, emotionally describing her breakup with Hernandez .........................................3

    D.  The afternoon of July 19, 2017, Plaintiff and Hernandez had lunch together, following which Plaintiff slammed a car door on Hernandez's hand and chased him in her car as he left the parking lot ...........................................................................................4

    E.  On the morning of July 24, 2017, following requests by Mia Long to Hernandez to deliver her personal mail to her, Hernandez arranged to do so without confrontation when Karen Cooney offered to deliver the mail to Ms. Long.  Ms. Long reported to HR that the singular event of delivery of the mail to her by Ms. Cooney on behalf of Hernandez constituted harassment and a hostile work environment ..............................4, 5

    F.  On July 24, 2017, Ms. Long disrupted a meeting that Mr. Hernandez was conducting with interns, with the events of July 19 fresh in his mind and knowing of Ms. Long's volatility as she had previously attempted suicide in his house, Mr. Hernandez went to Court and obtained a Civil Protection Order prohibiting Ms. Long from being within 500 feet of him including at work.  Based upon the Civil Protection Order, the City transferred Ms. Long to a Parma facility ...........................................................8

    G.  On August 28, 2017, Ms. Long received a Notice of Pre-Discipline Conference for a Variety of charges but did not appear at the scheduled conference to contest the charges Despite notice that she could appear with a representative and that after the conference a recommendation would be made which could include withdrawal of the charges. Instead she immediately resigned ....................................................................9

IV.     LAW AND ARGUMENT ...............................................................................11

H.  Plaintiff's claims for sexual harassment fail as a matter of law because she and
Hernandez were engaged in a welcome consensual relationship, she has admitted
that the event she complained of did not impact her performance, her attitude,
or her day to day environment, and she has further disclaimed any claims of emotional
distress.  Moreover the City properly evaluated her claim under its HR policies when the
Plaintiff complained on the singular date of July 24, 2017 ............................................11

I.  Plaintiff has no claim for breach of contract as she relies upon the City's Sexual
Harassment Policy which is not a contract.  Moreover the City has complied with the
Requirements of that policy ...........................................................................................15

J.  Plaintiff has not proved the elements of any claim for negligent hiring, supervision,
or retention .....................................................................................................................15

K.  Plaintiff's claim for retaliation fails because she has not suffered any material adverse
action from the transfer of her work locale to Parma or from the Pre-discipline Notice
sent to her.  She cannot show that any prohibited conduct of the City existed to serve
as the proximate cause of any materially adverse employment action, and she had no
good faith basis to lodge a claim of sexual harassment in the first place ........................16

L.  Plaintiff's claim for severe emotional distress, Count 5 of the Complaint, has been
Dismissed with prejudice pursuant to the Court Order dated October 10, 2018, Docket #
17, which Dismissed with prejudice all claims for emotional distress ............................19

CONCLUSION ...............................................................................................................19

CERTIFICATE OF SERVICE ........................................................................................20

APPENDIX

Affidavit of Mark V. Webber Certifying Compliance with Local Rule 7.1(f)

Exhibit 1, Unsworn Declaration of Karen M. Cooney

Exhibit 2, Unsworn Declaration of Frances Paster

Exhibit 3, Unsworn Declaration of Jose Hernandez

Exhibit 4, Unsworn Declaration of Melinda Raimann

Exhibit 5, Unsworn Declaration of Hernando Harge

Exhibit 6, Unsworn Declaration of Mark V. Webber

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page:**

*Burlington Industries Inc. v. Ellerth* 524  U.S.  742, 765 (1998) ...........................12, 14

*Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405 (2006)17, 19

*Cicconetti v. Human Resource Center,* C.A. No. 2158, 1986 WL 10581 (9th Dist. slip. op. Sept. 24, 1986) ..............................................................................................15

*Johnson v. United States Dept. of Health and Human Services,* 30 F.3d 45,47 (6 Cir. 1994) ......16

*Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000)................................19

*Knox v. Neaton Auto Prod. Mfg., Inc.*, 375 F.3d 451, 457 (6th Cir. 2004)...................12

*Kramer v. Med. Graphics Corp.,* 710 F.Supp. 1144, 1145 (N.D.Ohio 1989) ...............15

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). ........................................12

*Melton v. U.S. Dept of Labor 373* Fed. Appx. 572 (6th Cir. 2010) ..........................17, 18

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986)...........................................11

*Oncale v. Sundowner Offshore Service, Inc.,* 523 U.S. 75 (1998)................................17

*Parker v. Strawser Construction, Inc.,* 307 F.Supp.3d 744, 760 (S.D.Ohio 2018) ........ 19

*Peltier v. United States*, 388 F.3d 984 (6th Cir. 2004) ................................................17

*Randolph v. Ohio Dep't of  Youth Servs., 453 F.3d 724 (6th Cir. 2006)*........................12

*Scott v. Metropolitan Health Corp.* 234 Fed. Appx. 341, 348 (6th Cir. 2007.)............................17

*Smith v. Rock-Tenn Servs., Inc.,* 813 F.3d 298, 307 (6th Cir. 2016) .............................12

*Sygula v Regency Hospital of Cleveland East,* 64 N.E.3d 458, 471 (Ohio App. 2016) ...............16

*Thibert v. City of Oregon, Ohio,* 724 F. Supp. 2d 830 (N.D. Ohio 2010.) ...................17

*Vaughn v. Watkins Motor Lines, Inc.* 291 F.3d 900, 906 (6th Cir. 2002)......................12

*Wholf v. Tremco, Inc., 2015 Ohio 171, ¶ 24, 26 N.E. 3d 902, 908*................................15

**Other Authorities** **Page:**

U.S.C. Title VII.................................................................................................15, 16, 17

42 U.S.C. 2000e-3(a) ......................................................................................16

29 CFR §1604.11(a)(3)....................................................................................11

R.C. Chapter 4112............................................................................................15

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**

**I.  STATEMENT OF THE ISSUES:**

Whether Plaintiff can prove a case for hostile work environment sexual harassment and retaliation in light of the deficiencies for such claims described in the summary of the argument below?

Whether Plaintiff can prove a breach of contract in a case in which the sexual harassment policy of the City does not constitute a contract and in which the City has not violated those provisions?

Whether Plaintiff can prove a case for negligent hiring, supervision, or retention in a case in which there is no evidence that Defendant Hernandez was guilty of any incompetence or misconduct, that the City knew of any such misconduct or incompetence, and no conduct by the City or Defendant Hernandez proximately caused any injuries to the Plaintiff.

**II.  SUMMARY OF THE ARGUMENT:**

Plaintiff who was engaged to Defendant Hernandez in a welcome relationship,  and lived with him in his house for three and a half years brings a claim for hostile work environment sexual harassment and retaliation in a case in which she voluntarily resigned in the face of a notice of pre-disciplinary conference, which she chose not to attend,  complained about a singular event that she admits did not impact her performance, her attitude, and her day to day performance, has suffered no adverse employment decisions, has withdrawn all claims for emotional distress, and has suffered no material adverse action against her.

Plaintiff has no claim for breach of contract alleging violation of the Sexual Harassment policy which is not a contract. Plaintiff cannot show any violation of the policy since there was

no sexual harassment perpetrated against her and since the City and Jose Hernandez complied with all requirements under the policy.

Plaintiff cannot establish the elements of a claim for negligent hiring, supervision, or retention since she cannot establish any incompetence or misconduct by Defendant Hernandez, any knowledge by the City of such incompetence or misconduct, any act or omission by Defendant Hernandez that caused injuries to Plaintiff, and that any negligence by the City in hiring, retaining, training, or supervising Defendant Hernandez proximately caused any injuries to the Plaintiff.  Plaintiff's claim for emotional distress (Count 5) has been dismissed with prejudice by court order dated October 10, 2018, docket entry # 17.

## III.     STATEMENT OF THE FACTS

### A.     PLAINTIFF AND DEFENDANT JOSE HERNANDEZ (HERNANDEZ) WERE ENGAGED IN A CONSENSUAL AND WELCOME RELATIONSHIP WHICH TERMINATED IN JULY 2017.

In 2014 Plaintiff began voluntarily cohabitating with Defendant Hernandez. (Admission 4.) Defendant Hernandez proposed marriage to Plaintiff. (Admission 5.) Plaintiff voluntarily accepted Defendant Hernandez's proposal of marriage. (Admission 6.) Plaintiff accepted an engagement ring from Defendant Hernandez. (Admission 7.) Defendant Hernandez's proposal of marriage was welcome to Plaintiff. (Admission 9). Plaintiff and Defendant Hernandez's Engagement was announced in an e-mail bulletin within the City of Cleveland. (Admission 10.)

Plaintiff moved into Defendant Hernandez's house and they lived together for three and one-half years in his house into July of 2017.  (Tr. p. 9 lines 15-24.) A picture of the happy couple on engagement day is Defendants' exhibit 1 ( Tr. p. 10 lines 4 –22). Plaintiff wore the engagement ring at work. (Tr. 11 lines 24-25 and 12 lines 1-2.) In July 2017, Plaintiff texted to Hernandez "… I'm not sure what happened to you. I thought you were the sweetest person in the

world. That was the guy I fell madly in love with. I don't know who you are." (Tr. p. 12 lines 16-25 and p. 13 lines 1-11.) According to Plaintiff she broke off the relationship in July 2017 but kept the engagement ring. Defendant Hernandez has never asked for it back. (Tr. 14 lines 11-15.) Plaintiff moved out of Hernandez's house in July 2017. (Tr. p. 21 lines 13-14.)

**B.     HERNANDEZ WAS NOT PLAINTIFF'S SUPERVISOR**

Hernandez was not Ms. Long's direct supervisor. Ms. Long reported up the organizational chain to Melinda Raimann and Commissioner Alex Margevicius. (Tr. p.15 lines 14-26 and Exh 3 and p. 16 lines 1-6.) and (Tr. Exh 25 Admissions 1 and 2.)   When she asked for sick leave she would request it from Melinda Raimann or from Commissioner Alex Margevicius. (Tr. p. 16 lines 17-20.) The Commissioner assigned her tasks. Mr. Hernandez did not assign her tasks directly. (Tr. p 17 lines 7-11.). From 2015-2017, Ms. Long reported to Melinda Raimann or Alex Margevicius. (Tr. p. 19 lines 7-11.) Hernandez never did work evaluations of Ms. Long. (Tr.  p. 19 lines 12-15, 22-23.)   Hernandez had no authority to hire, or fire, or suspend, or discipline Ms. Long and never made any recommendations for any such actions. (Hernandez declaration para. 15).

**C.     ON THE MORNING OF JULY 19, 2017, PLAINTIFF CONFRONTED HERNANDEZ'S SECRETARY KAREN COONEY, EMOTIONALLY DESCRIBING HER BREAKUP WITH HERNANDEZ.**

On Wednesday July 19, 2017, at approximately 7:50 a.m. Mia Long came into Karen Cooney's office and sat in a chair at Ms. Cooney's table. Ms. Long said "you will have to do all the HR tasks for Engineering: I am no longer able to work with Jose. He is an asshole and if I can't be friends with him out of work there's is no way in hell I am going to be friends while at work. He is an asshole and we have broken up and I have moved out." Ms. Long began to cry at that point, and Karen Cooney got up and went up to her as she was now standing and gave her a

3

hug and said "I'm so sorry things have not worked out for the two of you." Ms. Long then said "What kind of an asshole waits until he proposes to a woman to have a vasectomy knowing that I wanted a family. Then the asshole has another woman pick him up from that procedure. Then she calls that night to see how his balls are doing. That's fucked up. He is such an asshole. The HR Stuff is not hard I can show you what to do." Ms. Long then left Karen Cooney's office. (Karen Cooney declaration paragraphs 1-7.)

D. **THE AFTERNOON OF JULY 19, 2017, PLAINTIFF AND HERNANDEZ HAD LUNCH TOGETHER, FOLLOWING WHICH PLAINTIFF SLAMMED A CAR DOOR ON HERNANDEZ'S HAND AND CHASED HIM IN HER CAR AS HE LEFT THE PARKING LOT.**

On the morning of July 19, 2017, Plaintiff and Hernandez exchanged e-mails, scheduling lunch at Crust restaurant on St. Clair Ave. (Tr. p. 177 lines 22-25 and p. 178 lines 1-7 and exhibit 36.) Following her highly emotional state in the morning of July 19, 2017, as described above, she met Hernandez for lunch and yelled at him in the restaurant creating a scene. She then left the restaurant before Mr. Hernandez left. He waited a few minutes so as not be near her when he left. In the parking lot when he left, Ms. Long approached his car and slammed the car door on his hand causing great pain. When he drove away, she rapidly followed him in her car turning to follow him when he made turns. He obtained medical assistance from a friend of his who gave him an ACE bandage and some over the counter pain killers. He did not go to a hospital because he did not want to escalate the situation. Hernandez did not report the assault to the Cleveland Police but he did report it to Robert Jarvis, Chief Public Utilities Police. (Hernandez declaration paragraphs 3-9.)

E. **ON THE MORNING OF JULY 24, 2017, FOLLOWING REQUESTS BY MIA LONG TO HERNANDEZ TO DELIVER HER PERSONAL MAIL TO HER, HERNANDEZ ARRANGED TO DO SO WITHOUT CONFRONTATION WHEN KAREN COONEY OFFERED TO DELIVER THE MAIL TO MS. LONG. MS.**

4

**LONG REPORTED TO HR THAT THE SINGULAR EVENT OF DELIVERY OF THE MAIL TO HER BY MS. COONEY ON BEHALF OF HERNANDEZ CONSTITUTED HARASSMENT AND A HOSTILE WORK ENVIRONMENT.**

On Monday July 24, 2017, Hernandez told Ms. Cooney that he had Mia's mail which had been delivered to his house and that he was concerned about giving it to Mia.  Karen offered to take the mail down to Mia since Mia had put Karen in the middle by informing Karen that she, Mia would no longer be working with Hernandez. So around eight o'clock a.m. Hernandez gave to Karen Ms. Long's laptop and a clear plastic bag with some envelopes inside sitting on top of the laptop. Karen then took the items downstairs and walked into Mia's office. Mia was sitting at her desk and co-worker Saundra Foster was standing in front of the desk. Karen said "Good morning ladies, Mia I was asked to give this to you." She replied "what is it?" Karen said, it is your mail." Karen then put it on her desk in front of where Ms. Long was sitting and left the office. Ms. Cooney did not throw the mail at Ms. Long. (Cooney declaration Paragraphs 8-13.)

On the morning of July 24, 2017, upon receipt of the mail, Plaintiff complained to Frances Paster an HR manager about Hernandez. (Tr. p. 36 lines 13-21.)  That afternoon Plaintiff wrote to Ms. Paster as follows: "Regarding the situation I shared with you this morning, It's almost an abuse of power  for a manager to put an employee in the middle of a situation such as that…" (Tr. page 37 lines 6-25, exhibit 8 and page 37 Lines 1-6.) Ms. Long also wrote to Hernandez from her personal e-mail to his personal email "It's an abuse of power to order your secretary to hand deliver me my personal mail at work…" Long Tr. page 38 lines 7-25 and exhibit 7 and page 39 lines 1-3.) Along the same lines Plaintiff subsequently sent to Director Robert Davis an e-mail dated July 27, 2017 in which she stated: "I followed chain of command and protocol, in the spirit of honoring your management style and preferences. I am being relocated to Parma Plant because I spoke to HR about a SINGULAR incident (emphasis

supplied) I had with a coworker." (Long Tr. p. 39 lines 24-25, p. 40 lines 1-14.) Similarly in an-

mail dated July 27 to Commissioner Alex Margevicius and Melinda Raimann, Plaintiff wrote "A

decision was made to move me to the Parma Plant because of an issue I had with a coworker.

Jose Hernandez abused his position and power when he instructed his assistant to handle my

personal mail and hand deliver it to me…"( Tr. page 39 lines 24-25 and page 40 lines 1-25 and

exhibit 9.)  (The transfer to Parma is discussed below.)

In describing her complaint to Frances Paster in her original answers to interrogatories

Plaintiff stated "Plaintiff attempted to make a verbal complaint to Commissioner Alex

Margevicius, but was prevented and made a complaint to Frances Paster of Human Resources,

which resulted in Plaintiff being disciplined and removed from her position after making a

complaint."  ( Tr. p. 114 lines 24-25, p. 115 line 1 Exhibit 26 answer to interrogatory 10.) Thus

all of e-mails that Plaintiff contemporaneously issued in July of 2017 up through her original

answers to interrogatories focused on the singular incident that she reported with respect to her

dissatisfaction with the delivery of the mail to her on July 24, 2017. She concedes that the act of

delivering the mail was not a sexual act of any kind. (Tr.  page 49 lines  23-25 and 50 line 1. )

Plaintiff recognized that Frances Paster to whom she complained was a Human Resources

Manager. (Tr. p. 141 lines 11-14.)

Despite this overwhelming evidence contemporaneously issued by Plaintiff that the

SINGULAR Complaint that she lodged with Frances Paster on July 24, 2017, pertained to

Cooney's delivery of personal mail to her at work, Ms. Long has now added long after the fact

testimony that she allegedly described certain sexual topics as well when she complained to Ms.

Paster. It is fair to infer that these dubious assertions which surfaced for the first time after a

conference with the court on October 9, 2018, are designed to fill a void which existed in the

Plaintiff's assertions. As previously noted, the Plaintiff has conceded that the singular act of delivery of her personal mail to her on July 24, 2017, did not involve a sexual act of any kind. Needless to say the absence of any sexual content in the case was a fatal deficiency in a case alleging sexual harassment. In the face of such deficiencies, Plaintiff, for the first time in her amended answer to interrogatory number 10 and in her deposition testimony now attempts to overcome this obvious deficiency in evidence by now averring that she mentioned a few instances of sexual subjects in her complaints to Frances Paster on July 24, 2017. (Tr. p. 172 lines 4-6, 16-25, and Exhibit 34, p. 173 lines 1-11, 19-25, p. 43 lines 24-25, p. 44 lines 1-25, p. 45 lines 1-25, p. 46 lines 1-5, p. 47 lines 23-25, p. 48 lines 1-21.) Nonetheless, even crediting these dubious assertions for purposes of summary judgment proceedings, examination of the "evidence" behind the assertions demonstrates as a matter of law that they do not rise to the level of instances necessary to sustain a claim of sexual harassment. In short the newly asserted evidence is as follows: 1) At a Christmas party in December of 2014, some three and half years before her complaint to Paster on July 24, 2017, a supervisor named Deborah Mitchell asked Hernandez in the presence of Ms. Long whether Hernandez and Long intended to have children. (Tr. p. 48 lines 3-21.) Such an innocuous question asked of a couple thirty one months before is not an act of sexual harassment. 2) The only other identifiable complaint also pertains to Deborah Mitchell. Ms. Long asserts that when Long and Hernandez dated, Deborah Mitchell asked him whether Long and Hernandez had engaged in sex and asked how it was? (Tr. p. 44 lines 15-17.) Hernandez allegedly told Long that he answered Ms. Mitchell's inquiry. It is not even clear from the record whether Long actually complained to Paster about that incident, but even if she did, the incident was remote in time, probably years before the events of July 24, 2017, and as a minimum months before the events of July 24, 2017. (Tr. p. 44 lines 24-25, p. 45

7

lines 1-9.) Those are the only two claimed incidents with any degree of specificity that recently surfaced and that were allegedly mentioned in the meeting of July 24, 2017.

**F.      ON JULY 24, 2017 MS LONG DISRUPTED A MEETING THAT MR. HERNANDEZ WAS CONDUCTING WITH INTERNS. WITH THE EVENTS OF JULY 19 FRESH IN HIS MIND AND KNOWING OF MS. LONG'S VOLATILITY AS SHE HAD PREVIOUSLY ATTEMPTED SUICIDE IN HIS HOUSE,  MR. HERNANDEZ WENT TO COURT AND OBTAINED A CIVIL PROTECTION ORDER PROHIBITING MS. LONG FROM BEING WITHIN 500 FEET OF HIM INCLUDING AT WORK. BASED UPON THE CIVIL PROTECTION ORDER, THE CITY TRANSFERRED MS LONG TO A PARMA FACILITY.**

On July 24, 2017, Ms. Long interrupted a meeting that Mr. Hernandez was conducting with some interns stating that she would report him to the Director of Public Utilities without explaining her rationale. (Hernandez declaration paragraph 13.) Mr. Hernandez was well aware of Ms. Long's volatility and lack of stability. She had recently slammed a car door on his hand and pursued him in a car on July 19, 2017. He was aware of a suicide attempt she had tried on February 1, 2016 in his house necessitating his calling the Avon Lake police to take her to a hospital for counseling. He was also aware that she threatened suicide on February 2, 2016 when she called him at work and threatened to commit suicide in the garage by carbon monoxide poisoning. (Hernandez declaration para 10-12.)  In the face of these multiple acts against him between July 19 and July 24, 2017 and with his knowledge of Ms. Long's volatility and lack of stability, Hernandez obtained a Civil Protection Order against Ms. Long on July 24, 2017 to protect himself.  (Hernandez declaration para 13.)

The Protection Order required Ms. Long to stay 500 feet away from him including at work. Following a discussion with the magistrate in Lorain County Court of Common Pleas, and as a result of that discussion, on July 24 after obtaining the order, Hernandez delivered a copy of the order to his Employer, the City of Cleveland.  (Hernandez declaration para 14.)   Hernando

8

Harge, Chief of Human Resources, reviewed the order and determined to transfer Ms. Long away from contact with Hernandez in order to comply with the order.  (Harge declaration paragraphs 3-6.)

On July 26, 2017, the City convened a meeting with Ms. Long to address transferring her.  Hernando Harge, Frances Paster, and Melinda Raimann attended the meeting along with Ms. Long.  She was informed that effective immediately she would be transferred to Parma and that the reason for the transfer was the Civil Protection Order. (Harge declaration paragraphs 5-6.; Melinda Raimann declaration para 4.) Commissioner Alex Margevicius had determined the locale of the transfer. (Harge declaration para 6.) After the meeting, Ms. Long took off two hours for vacation on July 26, 2017, additional vacation time and did not return to work until August 9, 2017, when she appeared at the Parma facility for work. (Tr. p.63 lines 9-15 and p. 64 lines 16-19.)  She has acknowledged in a sworn statement in her discrimination charge before the EEOC signed February 16, 2018, that the reason for her transfer was the Civil Protection Order. (Tr. p. 52 lines 8-25 and p. 53 lines 1-7 and Exh 11.)  On February 24, 2018, Ms. Long obtained a "right to sue letter." (Tr. p. 110 lines 22-25 and exhibit 24 and p. 111 lines 24-25 and page 112 lines 1-3.)

With the transfer, her rate of pay was not reduced, her job duties were not decreased, and the essential work functions were not altered. (Tr. exhibit 25, Answers to admissions 20, 21, and 22.)

**G.    ON AUGUST 28, 2017, MS LONG RECEIVED A NOTICE OF PRE-DISCIPLINE CONFERENCE FOR A VARIETY OF CHARGES BUT DID NOT APPEAR AT THE SCHEDULED CONFERENCE TO CONTEST THE CHARGES DESPITE NOTICE THAT SHE COULD APPEAR WITH A REPRESENTATIVE AND THAT AFTER THE CONFERENCE A RECOMMENDATION WOULD BE MADE WHICH COULD INCLUDE WITHDRAWAL OF THE CHARGES. INSTEAD SHE IMMEDIATELY RESIGNED.**

On August 28, 2017, Ms. Long received a notice of pre-discipline conference scheduling same for September 1, 2017. (Tr. page 68 lines 22-25 and page 69 lines 1-6 and Exhibit 15 Paster declaration paragraph 9 Exhibit B.) One charge was for abuse of sick leave. Another charge among the various charges was for dishonesty. In those charges the City claimed among other things that Ms. Long called in on August 22, 2017 on the FMLA call in line requesting the day off, but instead attended a Court hearing. Such an act appeared to violate the sick leave provisions and the dishonesty provisions of the work policies in the notice the City cited the human resource policies regarding abuse of sick leave and regarding dishonesty. (Tr. p. 68 lines 22-25, exhibit 15 and p. 69 lines 1-25, p. 70 lines 1-25, p. 71 lines 1-19.) She was advised in the notice of pre-discipline conference that she could present oral and/or written statements, testimony, documents, etc. in response to the charges. She could have a representative present and a representative from the Civil Service Association CSEA if she were a member of CSEA. She was further advised that within a reasonable time after the conference a recommendation would be forwarded to the appointing authority with an " outcome letter," for example no action, written warning, suspension, and/or removal. (Tr. pp. 68-73.)  As of August 28, 2017, Ms. Long had a lawyer who could have represented her in the Pre-discipline conference. (Tr. p. 74 lines 9-22.) Upon receipt of the Notice of Pre-discipline conference, Ms. Long did not attend the conference, did not seek legal counsel, and did not talk to anyone at the City about the pre-discipline notice. (Tr. p. 77 lines 23-25, 78 lines 1-16.) Instead on the same day she sent to her direct supervisor, Melinda Raimann a letter of resignation. She wrote:

 "Dear Mrs. Raimann, I would like to inform you that I am resigning from my position as business process analyst for CWD [Cleveland Water Division] effective August 28, 2017. Thank you for your opportunities for professional and personal development that you have provided me during my time here. I've enjoyed working for the Division and appreciate the support provided during my tenure with the Company." (Tr. P.76 lines 13-25 and 77 lines 1-9 and exhibit 16.)

In her charge before the EEOC, Ms. Long described her resignation letter as a "professional, uplifting resignation letter." (Tr. p. 78 lines 17-25 and exhibit 11. In the resignation letter she did not state anything about a hostile work environment or sexual harassment and didn't complain about any activities of the City. (Tr. p.79 lines 18-19.) Instead of attending the pre-disciplinary conference, Ms. Long declined to attend the calendar event.  (Tr. p. 80 Line 16-19.) Prior to her resignation, Ms. Long was not suspended or terminated. (Tr. page 81 lines 21-25.)   She simply did not take advantage of her right to contest the charges with representation and thus forfeited the chance that the charges would be withdrawn after consideration of any defense she could have presented. (Tr. p. 82 lines 1-11.)

## IV.    LAW AND ARGUMENT

**H.      PLAINTIFF'S CLAIMS FOR SEXUAL HARASSMENT FAIL AS A MATTER OF LAW BECAUSE SHE AND HERNANDEZ WERE ENGAGED IN A WELCOME CONSENSUAL RELATIONSHIP, SHE HAS ADMITTED THAT THE EVENT THAT SHE COMPLAINED OF DID NOT IMPACT HER PERFORMANCE, HER ATTITUDE, OR HER DAY TO DAY ENVIRONMENT, AND SHE HAS FURTHER DISCLAIMED ANY CLAIMS OF EMOTIONAL DISTRESS. MOREOVER THE CITY PROPERLY EVALUATED HER CLAIM UNDER ITS HR POLICIES WHEN THE PLAINTIFF COMPLAINED ON THE SINGULAR DATE OF JULY 24, 2017.**

Plaintiff cannot prove a claim for sexual harassment under either of the two possible theories: 1) harassment that creates an offensive or hostile environment; and 2) quid pro quo harassment in which a supervisor demands sexual favors as a condition for job benefits. See *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986)(citing 29 CFR §1604.11(a)(3)).

In general, to prevail on a hostile work environment claim, a plaintiff must show that (1) he or she was a member of a protected class; (2) he or she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual

harassment created a hostile work environment; and (5) the employer is liable. *Smith v. Rock-Tenn Servs., Inc.,* 813 F.3d 298, 307 (6th Cir. 2016) citing *Randolph v. Ohio Dep't of Youth Servs.,* 453 F.3d 724, 733 (6th Cir.2006).  Moreover, an employer can avoid liability by showing by a preponderance of the evidence that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior and the employee unreasonably failed to use preventive or corrective measures provided by the employer.  *Burlington Industries Inc. v. Ellerth 524  U.S. 742, 765, 118 S. Ct. 2257, 2270 141 L.Ed. 2d 633 (1998).*

"[T]o establish an employment discrimination claim, a plaintiff must present either direct evidence of discrimination [or harassment] or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Vaughn v. Watkins Motor Lines, Inc.* (6th Cir. 2002), 291 F.3d 900, 906 (internal citation omitted) If there is no direct evidence of discrimination and/or harassment, as Ms. Long is unable to establish here, the burden-shifting framework first established in *McDonnell Douglas Corp. v. Green* applies. (1973), 411 U.S. 792. If a plaintiff is able to establish a *prima facie* case of harassment or discrimination, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See Knox v. Neaton Auto Prod. Mfg., Inc.*, 375 F.3d 451, 457 (6th Cir. 2004) (*citing McDonnell Douglas Corp.,* 411 U.S. at 802). If the employer is able to satisfy this burden, the plaintiff must then prove that the employer's proffered reason for its actions were actually pretext to hide unlawful discrimination and/or retaliation. *Id.* (citing *McDonnell Douglas Corp.,* 411 U.S. at 804).

The deficiencies in Plaintiff's case are obvious. There were no unwelcome sexual activities in this case. Indeed Plaintiff and Defendant Hernandez lived together in his house for three and half years, and got engaged. These facts were well known at the City because the fact

12

of their engagement was publicized in an e-mail bulletin. The proposal of marriage was welcome to the Plaintiff. She wore her engagement ring at work. The long relationship was thus welcome and consensual. (Tr. Exh 25 admissions 4-10.)  The charged conduct after they broke up was precipitated by the delivery of Ms. Long's personal mail delivered to her one day at the work site. Karen Cooney volunteered to deliver the mail, and Ms. Long had already told Karen Cooney about the breakup.  (Cooney declaration paragraphs 2, 9.) Ms. Long has conceded that the act of delivering the mail to her had no sexual connotations and based her case upon the SINGULAR incident of the delivery of the mail in all of her contemporaneous correspondence in July 2017 on the subject. (Tr. 49 lines 23-25 and 50 line 1.)

Even crediting her belated assertions that she complained about an inquiry at a Christmas party in December 2014 about whether she and Hernandez were going to have children, and an assertion that Hernandez had told her he once responded to another employee's inquiry about their sex life, possibly years before but at least months before July of 2017,  those acts do not rise to the level of conduct creating an intimidating, hostile, or offensive working environment and that seriously affected  her psychological well-being. The complaint made July 24, 2017 did not reflect a severe and pervasive atmosphere of any harassment.  Indeed there was no emotional distress whatsoever as Plaintiff has conceded that she has withdrawn all claims of emotional distress. (See order dated October 10, 2018, docket entry 17.) Ms. Long has averred in an e-mail dated July 27, 2017, in complaining that she was being transferred that her <u>performance was not impacted, her attitude was not impacted, and her day to day environment was not impacted</u>. *Emphasis Added.* (Tr. P. 39 lines 24-25 and 40 line 1 exhibit 9.) This clear statement that there was no impact upon her work environment together with no claim of emotional distress defeats her claims for sexual harassment.

Still further under the *Ellerth* affirmative defense the City had in place a policy for employees to report claims of sexual harassment and the Plaintiff unreasonably failed to use preventive or corrective measures provided by the employer. Hernandez was not her supervisor. She only reported any complaints once on July 24, 2017. (Tr 141 lines 11-17.) In the interview, the Human Resource representative advised her that her complaints did not constitute actionable harassment. (Paster declaration para 4.) Based upon complaints which were deficient on their face, the City had no obligation to act any further.

Moreover, there was no adverse action taken against Plaintiff in this case. When she was transferred to Parma, the City did so as a result of a Civil Protection Order ("CPO") requiring that Ms. Long, the respondent had to be kept 500 feet away from Hernandez. In the transfer there was no change of title, pay, job duties, or benefits. (Tr. Exh 25 admissions 20, 21, and 22.) The transfer was on a temporary basis. (Harge declaration paragraph 6.) Plaintiff learned on August 28, 2017, that the CPO expired and the case had been dismissed. (Tr. 84 lines 1-8). But on that day she voluntarily resigned almost immediately upon receiving a notice of pre-disciplinary conference. Plaintiff, who had a lawyer in place, failed to take any steps to appear at the pre-disciplinary conference. Instead she immediately resigned before any discipline was imposed. (Tr. p. 77 lines 23-25; 78 lines 1-10.) She was advised in the pre-disciplinary notice that following the hearing in which she could be represented by counsel, a recommendation would be made and it was possible that the charges could be withdrawn. (Tr. pp. 68-73.) She failed to take advantage of the due process hearing that was available to her. Thus in her resignation she forfeited her rights to contest the charges against her. In any event, no discipline was ever imposed – no suspension, no termination, no loss of benefits. Thus all claims of sexual harassment fail under both federal and state law. State courts follow the standards under federal

law. "Federal case law interpreting Title VII * * * is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Wholf v. Tremco, Inc.,* 2015-Ohio-171, ¶ 24, 26 N.E.3d 902, 908.

**I.** **PLAINTIFF HAS NO CLAIM FOR BREACH OF CONTRACT AS SHE RELIES UPON THE CITY'S SEXUAL HARASSMENT POLICY WHICH IS NOT A CONTRACT. MOREOVER THE CITY HAS COMPLIED WITH THE REQUIREMENTS OF THAT POLICY.**

"The courts of Ohio have generally taken the position that company manuals and handbooks, alone, are insufficient to create implied contracts of employment to which the employer is legally bound." *Kramer v. Med. Graphics Corp.,* 710 F.Supp. 1144, 1145 (N.D.Ohio 1989) (citing *Cicconetti v. Human Resource Center,* C.A. No. 2158, 1986 WL 10581 (9th Dist. slip. op. Sept. 24, 1986). The only "contract" relied upon by Plaintiff is the sexual harassment policy. (Tr. p. 140 lines 11-25 and exhibit 30 and 141 line 1.) That policy is simply a set of work rules under which the employees worked. It does not create a contract of any kind. Moreover, Plaintiff has failed to prove sexual harassment as defined in the policy which requires proof of unwelcome conduct. As noted the conduct here involving an engaged couple who lived together for three and a half years with the Plaintiff's wearing her engagement ring, was consensual and welcome. The City did not violate the policy and the Human Resource department considered her complaints. They simply did not rise to the level necessary to sustain a claim for sexual harassment under the policy.

**J.** **PLAINTIFF HAS NOT PROVED THE ELEMENTS OF ANY CLAIM FOR NEGLIGENT HIRING, SUPERVISION, OR RETENTION.**

For the Plaintiff to prevail on a claim for negligent hiring, retention, training, and supervision, a plaintiff must establish: 1) the existence of an employment relationship; 2) the employee's incompetence or misconduct; 3) the employer's actual or constructive knowledge of

15

that incompetence or misconduct; 4) the employee's act or omission that caused the plaintiff's injuries; and 5) negligence in hiring, retaining, training, or supervising the employee proximately caused the plaintiff's injuries. *Sygula v Regency Hospital of Cleveland East,* 64 N.E.3d 458, 471 (Ohio App. 2016).  Plaintiff does not claim that Hernandez victimized other people – only her. (Tr. p. 142 lines 20-25, p. 143 lines 1-21.) She did not report any alleged injury until July 24, 2017. She has no evidence that he was not a competent engineer. She has no evidence that there was a problem with Hernandez before she reported him on July 24, 2017.  She tries to blame manager Deborah Mitchell for her alleged conversations with Hernandez but acknowledges that Deborah Mitchell did not have any responsibility for hiring Hernandez or supervising him. She inexplicably alleges that transferring her to Parma somehow constituted a failure to train by the City. (Tr. pp. 142-144 and 145  lines 1-2.)

**K. PLAINTIFF'S CLAIM FOR RETALIATION FAILS BECAUSE SHE HAS NOT SUFFERED ANY MATERIAL ADVERSE ACTION FROM THE TRANSFER OF HER WORK LOCALE TO PARMA OR FROM THE PRE-DISCIPLINE NOTICE SENT TO HER. SHE CANNOT SHOW THAT ANY PROHIBITED CONDUCT OF THE CITY EXISTED TO SERVE AS THE PROXIMATE CAUSE OF ANY MATERIALLY ADVERSE EMPLOYMENT ACTION, AND SHE HAD NO GOOD FAITH BASIS TO LODGE A CLAIM OF SEXUAL HARASSMENT IN THE FIRST PLACE.**

42 U.S.C. 2000e-3(a) and its anti-retaliation provision forbids "discrimination against" an employee who inter alia has "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in a Title VII proceeding or investigation." 42 U.S.C. 2000e-3(a). The elements for such a claim are that 1) the Plaintiff engaged in protected activity; 2) this exercise of protected rights was known to the defendant; 3) the defendant thereafter took adverse employment action; and 4) there was a causal connection between the protected activity and the adverse employment action. *Johnson v. U.S. Dept. of Health & Human Services*, 30 F.3d 45, 47 (6 Cir. 1994).  Plaintiff cannot prove elements any of the elements as noted below.

16

In *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405 (2006), the Supreme Court analyzed the standards for an anti-retaliation claim pursuant to Title VII. The Court noted that the Plaintiff must show an adverse employment action which would have been materially adverse to a reasonable employee or applicant. *Id.* at 67-68.  The Court separated significant from trivial harms noting that Title VII does not protect against all retaliation but from retaliation that produces an injury or harm. *Id.* at 68. The Court noted that Title VII is not a general civility code for the American workplace and does not protect against petty slights. *Id.* at 68 (quoting *Oncale v. Sundowner Offshore Service, Inc.,* 523 U.S. 75, 80, 118 S. Ct. 998, 170 L.Ed.2d 201 (1998). Title VII forbids only behavior so obviously offensive as to alter conditions of a victim's employment. *Thibert v. City of Oregon, Ohio,* 724 F. Supp. 2d 830 (N.D. Ohio 2010.)

The standard is objective, focusing upon a reasonable employee. *Burlington* at 68.The Court further noted that "By focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position, we believe this standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaint about discrimination."  *Burlington* at 69-70. In *Melton v. U.S. Dept of Labor,*) the Sixth Circuit Court of Appeals held that a letter of warning that was merely a precondition to discipline set to expire six months after its issuance failed to constitute an adverse employment action sufficient to support a retaliation claim. *Melton v. U.S. Dept. of Labor*, 373 Fed. Appx. 572, 578 (6th Cir.2010). Moreover, actions that are not implemented are not adverse employment actions. *See Scott v. Metropolitan Health Corp.* 234 Fed. Appx. 341, 348-49 (6th Cir. 2007) (citing *Peltier v. United States*, 388 F.3d 984 (6th Cir. 2004).

Against this legal backdrop illustrating the requirements for demonstrating materially adverse actions, Plaintiff's claims for retaliation fail. As established by the Plaintiff's failure to timely respond to requests for admissions nos. 20, 21, and 22, Plaintiff's rate of pay was not reduced by the City in 2017, Plaintiff's job duties were not decreased, and Plaintiff's essential work functions were not altered in any way. (Tr. exhibit 25 admissions 20-22.) These admissions effectively dispose of any claim for retaliation relating to the job transfer or pre-disciplinary hearing notice. Moreover, the parties agree that the reason for the transfer to the job transfer was the issuance of the civil protection order. (See Harge declaration paragraphs 3-6.)    The fact that Long in her deposition testimony (Tr. 53 lines 8-11) claims in the meeting of July 26, 2017 no one mentioned the CPO does not create a material question of fact because she cannot flee from her subsequent admission in her sworn statement before the EEOC on February 16, 2018, that the reason for her transfer was the CPO. (Tr. p.55 lines 18-21 and exhibit 11.) Moreover, she conceded in her letter dated July 27, 2017 that as a result of her complaint of harassment on July 24, 2017, her performance was not impacted, her attitude was not impacted and her day to day environment was not impacted. (Tr. p. 39 lines 24-25 and 40 line 1 and exhibit 9.) She simply did not suffer any materially adverse action in the transfer to Parma. Moreover the actions complained of were not the proximate cause of her transfer. The court ordered Civil Protection Order was. Thus her claim falls for yet another reason. The pre-disciplinary hearing notice was not actionable because as in the cases cited above it did not impose discipline. It was a pre-disciplinary notice on charges that Plaintiff, who had counsel at the time was free to contest in the conference that she voluntarily chose to eschew. She voluntarily resigned with a very complimentary resignation letter. (Tr. p. 76 lines 13-25 and 77 lines 1-9 and exhibit 10.) She has

18

waived any rights to complain about her separation from employment which she created by resigning almost immediately after receiving the pre-disciplinary notice.

Finally, while an employee can file a retaliation claim even if unsuccessful on the underlying claim for sexual harassment, she must nonetheless still have a good faith basis to file the claim in the first place. *Parker v. Strawser Construction, Inc.*, 307 F.Supp.3d 744, 760 (S.D.Ohio 2018)(citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000)).

Ms. Long did not have any such good faith claim. Her original submission focused exclusively on the fact that her personal mail was delivered to her at work – a fact that she agrees had no sexual connotations. (Tr. p. 49 lines 23-25 and p. 50 line 1.) Moreover her knowledge that her performance and attitude were not impacted and her day to day environment was not impacted, belie any protestations that she had a good faith belief that there was an actionable claim for sexual harassment. Thus her claims for retaliation must fail. Indeed all of the elements for such a claim are missing: 1) She did not engage in protected activity, having made no good faith claim of sexual harassment. 2) While the City knew of her claim, she did not make it in the exercise of protected rights. 3) Thereafter the City took no material adverse employment action required by *Burlington*. 4) There was no causal connection between the allegedly protected activity and the adverse employment action.

L.     **PLAINTIFF'S CLAIM FOR SEVERE EMOTIONAL DISTRESS, COUNT 5 OF THE COMPLAINT, HAS BEEN DISMISSED WITH PREJUDICE PURSUANT TO THE COURT ORDER DATED OCTOBER 10, 2018 DOCKET ENTRY # 17**.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully submit that summary judgment should be granted in their favor and that Plaintiff's claims should be dismissed with prejudice.

Respectfully Submitted,

BARBARA A. LANGHENRY (0038838)
Director of Law


By:   /s/*Mark V. Webber*
      MARK V. WEBBER (0007544)
      Chief Assistant Director of Law
      TIFFANY FISCHBACH (0083348)
      Assistant Director of Law
      AMANDA BOUTTON (0093659)
      Assistant Director of Law
      City of Cleveland, Department of Law
      601 Lakeside Avenue, Room 106
      Cleveland, Ohio  44114
      Tel:    (216) 664-2800
      Fax:   (216) 664-2663
      Email: MWebber@city.cleveland.oh.us
               TFischbach@city.cleveland.oh.us
               ABoutton@city.cleveland.oh.us
      Attorneys for Defendants


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Defendants' Motion for Summary Judgment and Memorandum in Support* was filed electronically this 12th day of November, 2018, via the Court's electronic filing system. A copy of the aforementioned motion is available to all parties electronically through the Court's electronic filing system.

        /s/*Mark V. Webber*
        MARK V. WEBBER (0007544)

# APPENDIX