IN THE FEDERAL DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MIA LONG, | ) | CASE NO. 1:18-CV-01407 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JAMES S. GWIN |
| v. | ) | |
| | ) | **DEFENDANTS' REPLY IN SUPPORT OF** |
| CITY OF CLEVELAND, *et al*, | ) | **DEFENDANTS' MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| Defendant. | ) | |

Defendants, City of Cleveland (the "City"), City of Cleveland Department of Public Utilities ("DPU"), and Jose Hernandez ("Hernandez") (collectively "Defendants"), by and through undersigned counsel, hereby submit the following reply in support of Defendants' Motion for Summary Judgment, filed on November 12, 2018.

## I.      INTRODUCTION

Literally at the eleventh and a half hour, at 11:25 PM, on the date that Plaintiff Mia D. Long's ("Long") brief in opposition was due, Long filed a brief which failed to comply with the requirements of Local Rule 7.1(f) regarding page limitations and regarding an affidavit of compliance with the requirements of the local rule. (Doc. No. 23) In this noncomplying brief, Long makes factual allegations throughout that are not supported by any reference to evidence in the record, provides a misleading analysis of the depositions of Frances Paster and Defendant Jose Hernandez—which when read in contexts actually support Defendants' motion for summary judgment, raises new assertions about alleged sexual harassment issues never before raised and unsupported by citations to the record, and totally ignores the dispositive impact of

1

requests for admissions that were answered untimely and which are therefore deemed admitted. Long also ignores the impact of her own concessions that the singular incident of which she complained to Paster had no impact on her work performance, her attitude, and her work environment. (Doc. No. 20, pp. 39:24-40:1; Doc. No. 20-10) Finally, Long ignores the fact that all claims for emotional distress have been withdrawn with prejudice. (Doc. No. 17)

These factors doom Long's claims for sexual harassment and retaliation because they negate the essential elements necessary to prove a hostile work environment claim based upon sex harassment and further negate any claims that Long suffered an adverse employment decision and/or materially adverse employment action necessary to sustain a claim for retaliation.

## II. ALL REQUESTED ADMISSIONS ARE DEEMED ADMITTED BY PLAINTIFF'S FAILURE TO TIMELY RESPOND TO DEFENDANTS' PROPOUNDED REQUESTS FOR ADMISSION AND THESE ADMISSIONS DICTATE THAT SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF DEFENDANTS

As noted by Defendants in their Motion for Summary Judgment filed November 12, 2018, on July 10, 2018, Defendants propounded requests for admission on Long with a boldface warning that the requests for admission would be deemed admitted unless answered within 30 days. (Doc. No. 19) The answers were due on August 9, 2018. Long did not respond until September 12, 2018. (Doc. No. 19-1, Declaration of Mark V. Webber, ¶¶ 3-4) Defendants relied upon the admissions in their motion for summary judgment.

Fed. R. Civ. Pro. 36 provides that requested admissions are deemed admitted if not answered in a timely fashion within 30 days after service. Moreover, the admissions are conclusively deemed admitted and prevail over contradictory affidavits or other evidence offered by the nonmoving party in the summary judgment proceeding. *See Goodson v. Brennan*, 688 Fed. Appx. 375, 376 (6th Cir. 2017), *citing Williams v. Wells Fargo Bank N.A.,* 560 Fed. Appx. 233,

244 (5th Cir. 2015) (Such conclusive admissions "cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the record.").

The admissions now deemed admitted conclusively establish the following facts:

1.  Hernandez was not Long's direct supervisor;

2.  During her employment Long reported directly to Melinda Raimann;

3.  In 2014, Long began voluntarily cohabitating with Hernandez;

4.  Long accepted an engagement ring from Hernandez;

5.  Hernandez's proposal of marriage was welcome to Long;

6.  A requirement of the *ex parte* civil protection order was that Long and Hernandez remain separated, even in the workplace;

7.  After July 2017, the City did not issue any discipline to Long;

8.  On August 28, 2017, Long submitted a resignation letter, which was attached to the requests for admission as Exhibit A, to her direct supervisor, Melinda Raimann;

9.  Long submitted the resignation letter without being prompted to resign by any employee or agent of the City;

10.  Long voluntarily resigned from her employment at the City by and through the resignation letter;

11.  The resignation letter provides: "Thank you for the opportunities for professional and personal development that you have provided me during my time here. I have enjoyed working for the Division of Water and appreciate the support provided during my tenure with the company."

12.  Long was not threatened with termination during her employment with the City;

13.  Long informed Karen Cooney about the end of Long and Hernandez's relationship;

14.  Long's rate of pay was not reduced by the City in 2017;

15.  Long's job duties were not decreased by the City in 2017; and

16.  Long's essential work functions were not altered by the City in 2017.

(See Doc. No. 20-26, at Admissions 1-2, 4, 6-7, 9, 11-12, 17, 19, 20-22).

**III.**    **HERNANDEZ EXERCISED HIS RIGHT TO FILE FOR A CIVIL PROTECTION ORDER WITHOUT ANY KNOWLEDGE THAT A CLAIM ALLEGING SEXUAL HARASSMENT HAD BEEN MADE AGAINST HIM. THEREFORE, HIS ACTIONS IN FILING FOR THE CIVIL PROTECTION ORDER CANNOT BE RETALIATORY AS A MATTER OF LAW.**

The evidence is uncontradicted that all that Frances Paster told Hernandez on July 24, 2017, was that Long had complained about Karen Cooney delivering Long's personal mail to Long at work. (Doc. No. 25, Deposition of Frances Paster, p. 21:1-12, 31:18-32:8) Furthermore, Long sent Hernandez an e-mail on July 24, 2017, which also only complained about the singular incident involving the delivery of personal mail. (Doc. No. 20, p. 38:7-16, Exhibit 7) Long has also admitted that this issue of delivery of the mail was not a sexual act. (Id., p. 49:23-25, 50:1) Thus, Hernandez had no knowledge of any complaint of alleged sexual harassment when he went to court to obtain the Civil Protection Order ("CPO"). Accordingly, Long's claim for retaliation must fail because there is no evidence that Hernandez knew of any protected activity when he sought judicial relief.

**IV.**    **HERNANDEZ OBTAINING A CIVIL PROTECTION ORDER AGAINST LONG CANNOT BE SEEN AS RETALIATION BECAUSE HE HAD A GOOD FAITH BASIS FOR ENGAGING IN A PROTECTED LEGAL ACTIVITY.**

An employer pursuing legal action against an employee, or in this case a co-worker pursuing legal action against another co-worker, cannot be per say retaliatory. *Greer-Burger v. Temesi* (2007), 116 Ohio St.3d 324, 326 (internal citations omitted). This is because, "the right to petition one's government for the redress of grievances is enshrined within the First Amendment to the United States Constitution." *Id.* When reviewing a legal action to determine whether or not it is objectively baseless, and thus whether or not it is retaliatory, the party bringing the lawsuit must demonstrate that it raises a genuine issue of material fact. *Id.*, citing *Bill Johnson's Restaurants, Inc. v. Natl. Labor Relations Bd.* (1983), 461 U.S. 731, 745, 103 S.Ct. 2161, 76

L.Ed.2d 277, fns. 11 and 12. An employer, or in this case a co-worker, may bring a legal action against an employee so long as the case is shown not to be retaliatory and is brought in good faith. *Id.*, citing *Baker v. Summit Unlimited, Inc.* (N.D.Ga.1994), 855 F.Supp. 375, 377. "Merely filing a suit is insufficient evidence of an employer's retaliatory motive." *Id.*

There is no indication that Hernandez obtaining an *ex parte* Civil Protection Order ("CPO") was baseless or without merit as the Magistrate granted it to him and instructed Hernandez to deliver it to his employer. (Doc. No. 24, pp. 33:20-34:7) Had the Lorain County Magistrate not believed that Hernandez presented a good faith basis for obtaining a CPO, the magistrate would not have granted it. Long's refrain that the CPO was "fraudulent and bogus" is merely her baseless opinion and does not undermine the legality and legitimacy of the order. The order was granted after a magistrate heard the evidence Hernandez presented—his consistent description of how Long had slammed a car door on his hand and pursued him in her personal vehicle. The very granting of the *ex parte* CPO undermines any claim that it was obtained by bad faith or without a showing of good cause unless Long intends to claim that the magistrate is also corrupt and against her.

Once the City had received a copy from Hernandez, and Hernandez was directed to do by the magistrate, the City acted in accordance with the order and made temporary arrangements to separate Long from Hernandez until there was a permanent ruling on the CPO. (Doc. No. 19-5) There is no indication of the presence of bad faith in Hernandez's act of obtaining a CPO because, as he explained, many things had occurred in their relationship that caused him to be fearful for his property and his children when Long began to exhibit disruptive behavior, even bringing their conflict into the workplace. (Doc. No. 24, at Exhibit 3; pp. 10-12, 15-16) The CPO was obtained in good faith and Hernandez did not utilize City time to obtain it—he properly

requested vacation time. (*Id.* at 20:20-22.) Everything that occurred as a result of the CPO was merely the City reacting to a court order which it was obliged to follow.

Long's assertion in her opposition that the City should have somehow disciplined Hernandez after the *ex parte* CPO was obtained is concerning and would require the City to have retaliated against Hernandez for engaging in a protected legal activity afforded to him under the Ohio Revised Code. *See* R.C. 2919.26. When presented with a valid legal order, the City cannot discipline Hernandez for feeling unsafe and attempting to protect himself, his children, and his home. The City simply explained to Long that she would be temporarily moved to a different, yet acceptable workspace in order to await a final resolution of the situation. (Doc. No. 19-5) None of her job duties were changed apart from her voluntarily requesting not to engage in HR functions that involved Hernandez's section or employees any longer—which the City also allowed to appease Long. (Doc. Nos. 19- 2; 19-5)

## V.  THE CITY'S PRACTICE IS TO TEMPORARILY TRANSFER THE WORKSPACE OF AN EMPLOYEE WHO HAD BEEN ENJOINED BY A COURT IN A CIVIL PROTECTION ORDER TO REMAIN SEPARATED FROM ANOTHER EMPLOYEE.

Frances Paster has established that in the event of a CPO involving two employees, the practice of the City was to transfer the respondent who had been restrained. In this case, the restrained respondent was Long. The City, which was on notice of the 500 foot restriction in the CPO between Long and Hernandez, simply followed its practice. (Doc. Nos. 19-3; 25, p. 38:20-39:17)

## VI.  PASTER APPROPRIATELY REACTED TO LONG'S COMPLAINT ABOUT THE MAIL, TALKED AT LENGTH TO LONG, AND ADVISED HERNANDEZ ABOUT HOW TO HANDLE THE SITUATION APPROPRIATELY.

Long's opposition claims that, "When Plaintiff complained, and met with Defendant's [sic] Labor Relations Manager Frances Paster (Paster) Plaintiff's complaints of Hernandez' [sic]

actions and a hostile work environment was [sic] dismissed as personal issues (Paster deposition pg. 17-21)"  However, this is not an accurate summary of events nor is this what Paster testified to as Paster explained in her deposition that she took the time to speak with Long, parse out the actual issues, comfort her, and addressed the situation appropriately between Long and Hernandez. "When she entered my office, I shut the door of course, and asked her to explain why she, you know, told me she was working in a hostile work-environment and that she was being harassed. The things that she stated is—she informed me that her and Jose had broken up." (Doc. No. 25, p. 18:20-25) Frances continued explaining, "And so she complained that his secretary had gave her personal mail and that she no longer lived in his home and that she had moved out… and that was her concern." (Id., p. 19:2-4)

Paster continued to listen to the details of the break-up between the two employees and listened to Long explain Hernandez's private medical procedures to her. (Id. p. 19-20) Paster, a qualified HR professional, recognized that Long had not actually suffered any sexual harassment, Hernandez was not her supervisor, and Hernandez had not done anything against City policy and procedure. (Id.) Paster then explained to Long, "'I don't see any harassment or anything." I said, 'but regarding the mail, the only thing I can do is just meet with Jose and tell him, hey listen, if there's any personal mail, you know, put a note on it and send it back to a return address.' And I encouraged her too, and said, 'if you moved out, do a forwarding mail-it." (Id., p. 20:7-17) Paster then addressed the issue with Hernandez, as she told Long she would, and explained to him, "I don't know what's going on, but don't bring your mail here." (Id., 21:11-12)

There was nothing to discipline Hernandez for and nothing negligent on the part of Paster in handling the situation. She listened to Long's distress about the break-up, professionally analyzed the situation and recognized that Long was just upset about the end of the relationship

but had not actually been harassed, bullied, or had her work seriously affected in any way. Thus, there was no need to discipline Hernandez. However, to help Long and avoid any further conflict, Paster went to Hernandez and advised him that it was more appropriate to handle issues related to the end of their personal relationship, such as the delivery of personal mail, outside of work and the office.

Not only does Long's opposition grossly mischaracterize Paster's reaction to Long's meeting with her, but it contradicts itself. Long claims that Paster did not investigate or react properly but then further becomes upset that Paster spoke to Hernandez and addressed the situation. (Doc. No. 23, p. 18) The existence of both complaints about the situation is a near impossibility—if Paster had not addressed it, Long would still be upset, but when Paster addressed it with Hernandez to ensure that it never happened again, Long is still upset. (*Id.*) It is nonsensical and Long is grasping at straws in an attempt to manufacture issues of fact that are simply not present.

Moreover, since no adverse employment action was ever taken against Long, the *Ellerth* affirmative defense is available and defeats her claims under both tests for such a defense. (Doc. No. 19, pp. 13-14)  The City took care to properly tell Hernandez not to deliver personal mail to Long and Long unreasonably failed to take advantage of continuing opportunities to voice her alleged complaints since her only complaint to Human Resources during her employment was on July 24, 2017—and this complaint was properly addressed by Paster.

**VII.      LONG'S RESIGNATION WAS NOT FORCED NOR WOULD A REASONABLE PERSON TAKE SUCH ACTION UNDER THE CIRCUMSTANCES AND THUS LONG CANNOT MAINTAIN THAT SHE WAS CONSTRUCTIVELY DISCHARGED FROM HER EMPLOYMENT AT THE CITY.**

For an atmosphere of sexual harassment or hostility to be actionable, the offending behavior "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and

create an abusive working environment." *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, at 67, 106 S.Ct. 2399 (1986) (internal quotation marks and brackets omitted). A hostile-environment constructive discharge claim entails something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign. *Pennsylvania State Police v. Suders, 542 U.S. 129, 146-147, 124 S. Ct. 2342, 2354, 159 L. Ed. 2d 204 (2004)* citing *Breeding v. Arthur J. Gallagher & Co.,* 164 F.3d 1151, 1160 (C.A.8 1999) ("[A]lthough there may be evidence from which a jury could find sexual harassment, ... the facts alleged [for constructive discharge must be] ... so intolerable that a reasonable person would be forced to quit."); *Perry v. Harris Chernin, Inc.,* 126 F.3d 1010, 1015 (C.A.7 1997) ("[U]nless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress.").

Long has not identified any behavior in the record that is sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. Quite the opposite, as noted previously, Long wrote in an e-mail to Human Resources that she was able to continue working and her work environment was not impacted. (Doc. No. 20-10) As such, if Long cannot meet her burden of demonstrating a hostile work environment, she cannot meet her burden of proving a hostile environment constructive discharge claim. As such, her claim fails. In fact, the only employment action taken by Defendant City of Cleveland is Long's transfer to the Parma Water Plant. However, Defendant City of Cleveland was required to keep Long and Hernandez separated because of a Court Order. Whether or not that Court Order was ultimately upheld or overturned bears no relevance on the actions taken by the City of Cleveland. It is not the City's responsibility to question the validity of a Court Order and as previously discussed in this Reply, Hernandez was within his rights to obtain the Civil Protection Order.

In any event, in the constructive discharge context, the Sixth Circuit affirmed a district court which held that "barring unusual circumstances, … a transfer at no loss of title, pay, or benefits does not amount to … [an] adverse employment action." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) citing *Darnell v. Campbell County Fiscal Court,* 731 F.Supp. 1309, 1313 (E.D.Ky.1990), *aff'd,* 924 F.2d 1057 (6th Cir.1991).  As such, Long's temporary transfer to the Parma Water Plant cannot constitute a materially adverse employment action because she admittedly suffered no loss of title, pay or benefits. (Doc. No. 20-26, Admissions Nos. 20-22) There is simply nothing in the record to show that Defendants constructively discharged Long.  Rather, the record shows that she simply made a personal decision to leave her employment.  Long's unsupported accusations of hostile conduct on the part of Defendants do not create a genuine issue of material fact with regard to this claim. (*Id.*) Therefore, her constructive discharge claim must fail.

## VIII.  CITY EMPLOYEES HOLD THEIR POSITION AS A MATTER OF LAW AND NOT CONTRACT AND THUS PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT MUST FAIL.

City employees hold their positions as a matter of law, not contract. *Nealon v. Cleveland* (2000), 140 Ohio App.3d 101, 746 N.E.2d 694. A public officer or public general employee holds his position neither by grant nor contract, nor has any such officer or employee a vested interest or private right of property in his office or employment. *State ex rel. Gordon v. Barthalow,* 150 Ohio St. 499, 499, 83 N.E.2d 393, 393 (1948) Further, only the City's Law Director shall prepare all of the municipality's contracts in writing and no contract can take effect until the Law Director signs that contract.  R.C. 705.11; see also *Colon v. Cleveland,* 164 Ohio App.3d 323, 842 N.E.2d 116 (8th Dist. 2005).

*Nealon* and each of the cases cited stand for the proposition that individuals who deal with municipal corporations are expected to know the statutory limitations on the entity's power.  The employee must, "at their peril, ascertain all the necessary statutory requirements relative to these transactions have been complied with," including whether those with whom they are dealing had the legal authority to employ them.  *Brainard v. Toledo,* 2001-Ohio-4352, (Paragraph symbol) 21, 118 Ohio Misc. 2d 158, 166, 770 N.E.2d 153, 158 (citing *Kimbrell v. Seven Mile,* (1984), 13 Ohio App.3d 443, 13 OBR 532, 469 N.E.2d 954).  Therefore, Ms. Long, as a public employee, simply cannot maintain a claim for breach of contract because she was not in a contractual relationship with her employer, the City.

## IX.  IN HER MEMORANDUM IN OPPOSITION, PLAINTIFF HAS FABRICATED ADDITIONAL CLAIMS NEVER BEFORE RAISED AND NOT SUPPORTED BY ANY EVIDENCE OF RECORD.

Long now for the first time asserts that Hernandez retaliated against her because he could no longer have sexual intercourse with her after termination of their relationship. (Doc. No. 23, p. 7) She points to no evidence of record to support such a ridiculous assertion. She never made any such claim in her meeting with Frances Paster on July 24, 2017. (Doc. No. 25, p. 18-21) Moreover, she has not denied her tearful lament to Karen Cooney on July 19, 2017, in which she announced that she and Hernandez had broken up. (Doc. No. 19-2, ¶ 2)

Long now also professes for the first time that she quit to somehow protect her medical and pension benefits because she was allegedly worried that she would be discharged and would therefore lose her benefits. Again, she has not pointed to any evidence in the record documenting such a concern. Moreover, had she not shunned the predisciplinary conference it is possible that no discipline would have been imposed on Long at all. She chose to voluntarily resign. (Doc. No. 20-26 at Admissions 13-17) Additionally, Long has alleged factually unsupported conclusions in

paragraphs 6, 7, and 9 of her declaration without any evidentiary support. (Doc. No. 23, attached Declaration of Mia D. Long)

Long now also newly claims without any evidence in the record that she was escorted out of 1201 Lakeside by security. (Doc. No. 23, p. 19)  There is no such evidence. When she was transferred to the Parma location on July 26, 2017, she took off of work and used two hours of vacation time. (Doc. No. 20-14) She was on vacation until August 9, 2017, when she appeared at Parma. (Doc. No. 20, pp. 63:9-15, 64:16-19; Doc. No. 20-14) Long resigned on August 28, 2017. (Doc. No. 20-17) If anything, Department of Public Utilities Personnel may escorted her to Ease@Work on February 2, 2016.

X.     **HERNANDEZ'S ACTIONS IN INVOLVING THE AVON POLICE WITH PLAINTIFF'S SUICIDAL ISSUES WERE DESIGNED TO PROMOTE HER WELFARE IN FEBRUARY 2016 WHEN THOSE ISSUES AROSE. IN ANY EVENT THEY ARE NOT ACTIONABLE SEXUAL ACTIVITIES, PLAINTIFF NEVER COMPLAINED ABOUT THAT INVOLVEMENT, AND REFERRAL TO EASE@WORK WAS FOR HER WELL-BEING.**

In a brief establishing that "no good deed goes unpunished" Long criticizes Hernandez for his actions in trying to assure that she did not commit suicide. Long does not contest the first episode on February 1, 2016, in which she was distraught about discussions regarding a breakup with Hernandez at that time, and stated to the police that she wanted to die, and scratched her wrist with a knife on the couch in the living room, but could not go through with the suicide. She went to the hospital that night. (Doc. No. 20, p. 97-101, Exhibits 18 & 19)

Long denies the second incident on February 2, 2016, in which Hernandez states that Long called him at work inquiring about how to commit suicide by carbon monoxide poisoning. He contends that in the morning, she stated that she was in the garage and inquired how long it would take to die. In response, Hernandez called the Avon Police and told them that his girlfriend was in the garage. The police responded, went to the house and found that she was not

there.  Upon learning that Long appeared at work, the police told Hernandez that they were going to arrest her to be detained to make sure she was safe. Hernandez begged them not to create a scene and asked if Lieutenant Jarvis at the Department of Public Utilities could handle the matter internally? The police called the City and made arrangements. Hernandez instructed the police on how it was best to act so that he could protect Long. (Doc. No. 24, p. 39:23-15, 40-42; Doc. No. 20 at Exhibit 20) Frances Paster, out of concern for Long's welfare, referred Long to Ease@Work for counseling. (Doc. No. 25, p. 15-16) Hernandez thought it was a good idea for Long's benefit. (Doc. No. 24, p. 43:5-10)

Curiously, Long admits to the first incident on February 1, 2016, but denies the second on February 2, 2016.  Nonetheless, Hernandez's testimony clearly demonstrates that he was promoting Long's best interests. In any event, these occurrences do not relate to her claims for sexual harassment since there was nothing sexual in them and there is no evidence that she ever complained about them to the City. Thus these events on February 1 and 2, 2016, are irrelevant to her claims. They are, however, relevant to Hernandez's state of mind when he sought the CPO. (Doc. No. 19-4, ¶10-13) Indeed the first suicide issue, which is uncontested, arose when the parties were discussing a breakup in 2016. As noted by Hernandez, the volatility and instability relating to Long's suicide issues were on his mind when he sought the CPO on July 24, 2017. (*Id.*, ¶ 13)

## XI.    CONCLUSION

For the foregoing reasons and the reasons stated in Defendants' Motion for Summary Judgment and Memorandum in Support, Defendants respectfully submit that their Motion for Summary Judgment should be granted.

Respectfully submitted,


BARBARA A. LANGHENRY (0038838)
Director of Law

By:     */s/ Mark V. Webber*
        MARK V. WEBBER (0007544)
        Chief Assistant Director of Law
        TIFFANY C. FISCHBACH (0083348)
        AMANDA M. BOUTTON (0093659)
        Assistant Directors of Law
        601 Lakeside Avenue, Room 106
        Cleveland, Ohio 44114
        Tel:     (216) 664-2800
        Fax:     (216) 664-2663
E-mail:MWebber@city.cleveland.oh.us
        TFischbach@city.cleveland.oh.us
        ABoutton@city.cleveland.oh.us

*Attorneys for Defendants*


## CERTIFICATE OF SERVICE

I certify that that on the 10th day of December, 2018, the foregoing *Defendants' Reply in Support of Defendants' Motion for Summary Judgment* was filed electronically via the Court's electronic filing system ("ECF"). Notice of this filing will be sent to all parties via the ECF system and parties pay access this filing through the Court's ECF system.


        */s/ Mark V. Webber*
        MARK V. WEBBER (0007544)

14