UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
--------------------------------------------------------------

|  |  |  |
|---|---|---|
| MIA LONG, | : | CASE NO. 1:18-CV-1407 |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| vs. | : | OPINION & ORDER |
|  | : | [Resolving Doc. 19] |
| CITY OF CLEVELAND, *et al.*, | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

--------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Mia Long sues Defendants the City of Cleveland (the "City"), City of

Cleveland Department of Public Utilities, and Jose Hernandez for Title VII and Ohio-law

sexual harassment, breach of contract, retaliation, and negligent hiring, supervision, and

retention.  Defendants now move for summary judgment on all claims.[1]

For the following reasons, the Court **GRANTS** Defendants' motion.

## I.  Background

In 2000, Plaintiff began working for the City of Cleveland Division of Water (the

"Division") as a business process analyst.[2]

In 2014 Plaintiff began a consensual romantic relationship with Water Division co-

worker Defendant Jose Hernandez.[3]  Plaintiff moved in with Hernandez and in October

---

[1] Doc. 19.  Plaintiff opposes.  Doc. 29.  Defendants reply.  Doc. 28.
[2] Doc. 20-39 (Long Dep.) at 4.
[3] *Id.*  By Plaintiff's own account, Hernandez was not her supervisor.  *Id.* at 7.  *See also* Doc. 20-5 (Division of Water organizational chart).  Hernandez did not assign her tasks and she did not report to him.  Doc. 20-39 at 7.  Plaintiff reported to Melinda Raimann, the major projects group administrative manager, and to Commissioner of Water Alex Margevicius.  *Id.*  Plaintiff did perform human resources tasks for the engineering department in which Hernandez worked.  *Id.*

2014, the couple became engaged.[4]  Many good things end and in July 2017 Plaintiff Long

ended the relationship and moved out of Defendant Hernandez's house.[5]

On the morning of July 24, 2017 Hernandez's secretary visited Plaintiff's office.[6]

She came by because Hernandez had asked her to deliver a laptop and personal mail that

Plaintiff had left in his house when she moved out.  The parties dispute how this incident

unfolded; Plaintiff states that Hernandez's secretary "threw" the items on her desk,[7] while

the secretary states that she placed them on Plaintiff's desk.[8]

Later on July 24th, Plaintiff visited Division human resources manager Frances

Paster to discuss the morning's incident.  Plaintiff complained that it was unprofessional for

Hernandez to involve his secretary in their personal matters.[9]  In a follow-up email to

Paster, Plaintiff wrote that "[i]t's almost an abuse of power to put an employee in the

middle of a situation such as that."[10]

Plaintiff says she also complained to Paster about certain past incidents at this

meeting.  She said that Hernandez discussed details of their personal relationship and sex

life with Plaintiff Long's superior, Deborah Mitchell.[11]  She says that sometime prior to

2017, Mitchell asked Hernandez if he and Plaintiff had sex, and how it was.[12]  Plaintiff says

---

[4] *Id.* at 5.
[5] *Id.* at 8.
[6] Doc. 19-2.
[7] Doc. 20-39 at 11.
[8] Doc. 19-2 at 2.
[9] Doc. 20-39 at 12.
[10] Doc. 20-9.  Plaintiff made a similar complaint in a July 24, 2017 email to Hernandez.  *See* Doc. 20-8.
[11] Doc. 20-39 at 13.
[12] *Id.*

Case No. 1:18-cv-1407
Gwin, J.

that she also related a 2014 Division Christmas party incident where Mitchell asked the

couple if they planned to have children.[13]

Later the same day, Defendant Hernandez went to the Lorain County Court of

Common Pleas and that Court issued an *ex parte* Civil Protection Order against Plaintiff.[14]

Defendant Hernandez says that several incidents led to this order.  First, he states that

Plaintiff came into his office during a July 24, 2017, intern meeting and threated to report

him to the Director of Public Utilities.[15]  Second, Hernandez states that Plaintiff slammed

his hand in a car door after an acrimonious July 19, 2017, lunch meeting.[16]  Finally,

Hernandez said that Plaintiff threatened to remove his daughter from his house without his

permission.[17]

Defendant Hernandez told the Division about the protective order.[18]  On July 26,

2017, Plaintiff met with supervisor Melinda Raimann, Frances Paster, and head of human

resources Hernando Harge.  At this meeting Raimann told Plaintiff that she was going to be

temporarily transferred to a Parma, Ohio, Division facility.[19]

The parties describe different descriptions and justifications for the transfer.  Plaintiff

says that Defendants separated the former couple until things "cool[ed] down" between

---

[13] *Id.* at 14.  Paster's account of this meeting does not include these latter two incidents.  Doc. 25-1 at 21.
Paster says that she promptly told Hernandez that he should not deliver Plaintiff's personal mail at work and
that he should keep his personal issues out of the workplace. *Id.*
[14] Doc. 19-4 at 2.  After an August 22, 2017 hearing on the merits, the case was dismissed.  *See* Doc. 20-39 at
18.
[15] Doc. 19-4 at 2.
[16] *Id.*  Plaintiff states that she does not recall this incident.  *See* Doc. 20-39 at 10.
[17] Doc. 24-1 at 23.
[18] Hernandez states that the Lorain magistrate instructed him to inform his employer.  Doc. 24-1 at 51.
[19] Doc. 20-39 at 16.

them.[20]  Raimann and Paster state that they transferred Plaintiff because of Hernandez's restraining order.[21]

Plaintiff says that the reason given for moving her, as opposed to Hernandez, was that Hernandez worked as a manager and was needed to oversee staff on-site.[22]  Further, Paster states that in situations where one city employee takes out a protective order against another, the Water Department used a policy to relocate the individual against whom the order was obtained.[23]

While Plaintiff's pay remained the same after the Parma transfer, the parties dispute whether this transfer decreased Plaintiff's duties and essential work functions.[24]  Plaintiff states that she had no work at the Parma worksite.[25]  Conversely, Defendants claim that the temporary transfer did not diminish Plaintiff's duties or work functions.

Plaintiff worked in Parma from August 9, 2017, to August 28, 2017.  On August 28, 2017, Plaintiff received a pre-disciplinary hearing notice.  With that notice, the Department told Plaintiff the hearing would consider whether: 1) Plaintiff had used Family Medical Leave Act leave to attend a court proceeding; 2) Plaintiff harassed Hernandez and violated

---

[20] *Id.*

[21] Raimann submits an unsworn declaration stating that at this meeting, "[Plaintiff] was informed that she was being temporarily transferred to our Parma facility because of a civil protection order that Jose Hernandez had obtained against her.  She was given a copy of the civil protection order and she read it."  Doc. 19-5. Plaintiff's February 16, 2018 EEOC charge seemingly corroborates this account.  In it, Plaintiffs states that the City of Cleveland Department of Public Utilities "decided to transfer me from my department to another department because harasser had filed a restraining order against me."  Doc. 20-12.

[22] Doc. 20-39 at 16.

[23] Doc. 25-1 at 42.

[24] On one hand, Defendants' requests for admission include a statement that the Parma transfer did not decrease her pay, duties, or essential work functions.  Doc. 20-26 at 7 (requests for admission 20, 21, 22). Because Plaintiff did not respond to these requests for admission within 30 days, Plaintiff admits these matters.  *See* Fed. R. Civ. P. 36(a)(3).  On the other hand, Plaintiff stated in her deposition that she was not given any work to perform in Parma.  *See* Doc. 20-39 at 19.

[25] Doc. 20-39 at 19.

his HIPAA rights by discussing his vasectomy with a co-worker; and 3) Plaintiff defamed the City of Cleveland in a Facebook post which stated "[t]he girl gets harassed at work.  The girl gets moved."[26]

Later that day, Plaintiff resigned.[27]  On February 16, 2018, Plaintiff filed an Equal Employment Opportunity Commission charge alleging Title VII sex discrimination and Americans with Disabilities Act disability discrimination.  On February 24, 2018 she received a right-to-sue letter.[28]  She then brought this suit in the Cuyahoga Court of Common Pleas claiming federal- and state-law sex discrimination, breach of contract, retaliation, negligent hiring, supervision and retention, and "severe emotional distress."[29]  Defendants removed the action to federal court.[30]

## II.  Discussion

### A.    Legal Standard

Summary judgment is proper where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled judgment as a matter of law."[31]  The Court views all facts and draws all reasonable inferences "in the light most favorable to the party opposing the . . . motion."[32]  Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party

---

[26] Doc. 20-16.
[27] Doc. 20-17.
[28] Doc. 20-25.
[29] Doc. 1-4.  Plaintiff subsequently dismissed the emotional distress claim.  *See* Doc. 17.
[30] Doc. 1.
[31] Fed. R. Civ. P. 56(a).
[32] *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted).

who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof."[33]

**B.    The Court Grants Summary Judgment to Defendants on Plaintiff's Title VII and Ohio Law Sexual Discrimination Claims**

Plaintiff claims Title VII[34] and Ohio-law sex discrimination on two different

theories.[35]  First, Plaintiff claims that she was subject to a hostile work environment and

was forced to resign as a result.   She also claims that her Parma transfer was a sex-based

adverse employment action.  The Court considers each theory in turn.

i.)      Hostile Work Environment Sexual Harassment

To recover on a "hostile work environment" claim, Plaintiff must show that: "(1) he

or she was a member of a protected class; (2) he or she was subjected to unwelcome

sexual harassment; (3) the harassment complained of was based on sex; (4) the charged

sexual harassment created a hostile work environment; and (5) the employer is liable.[36]

Where the alleged harasser is a co-worker, the Plaintiff must demonstrate that the employer

knew or should have known of the conduct and failed to take prompt and immediate

corrective action.[37]

A hostile work environment occurs "[w]hen the workplace is permeated with

discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to

alter the conditions of the victim's employment and create an abusive working

---

[33] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322  (1986).
[34] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*
[35] Because Ohio's antidiscrimination laws are modeled on Title VII, Ohio courts have historically followed federal law when evaluating sexual harassment claims under O.R.C. chapter 4112.  *See Wholf v. Tremco, Inc.*, 2015-Ohio-171, ¶ 25, 26 N.E.3d 902, 908.
[36] *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 307 (6th Cir. 2016) (citing *Harris v. Forklift Sys., Inc.* 510 U.S. 17, 21 (1993)).
[37] *Id.*

environment."[38]  The conduct must be so severe or pervasive that both a reasonable observer and the actual victim would perceive the environment as abusive.[39]

To support a constructive-discharge claim, the Plaintiff must show: "a situation in which an employer discriminates against an employee to the point such that [her] `working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'"[40]  To establish a constructive discharge claim, a "plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign."[41]

There is no record evidence from which a reasonable juror could conclude that Plaintiff faced a sufficiently hostile work environment.  Long complains about three incidents: 1) the July 24th delivery of her personal mail and laptop; 2) Deborah Mitchell's question to Hernandez about the couple's sex life; and 3) Deborah Mitchell's question whether the couple intended to have children.  Taken separately or together, these incidents do not create a hostile work environment.

It may have been improper for Hernandez to have his work secretary deliver Plaintiff's personal mail and laptop.  But nothing suggests that this impropriety had anything to do with Plaintiff's sex.  The impropriety, as Plaintiff herself acknowledged in her contemporaneous emails,[42] was that Hernandez involved his secretary in the couple's personal affairs.

---

[38] *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006)

[39] *Id.* at 733.

[40] *Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016), quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004).

[41] *Id.*

[42] Docs. 20-8, 20-9.

Supervisor Mitchell's sex life question to Hernandez was unprofessional.[43]  A

supervisor should refrain from asking about their subordinates' sex lives.  But the question

was not directed at Plaintiff.

Finally, Mitchell's 2014 question whether the couple would have children is

innocuous.  The couple had been dating for a significant period, and nothing indicates that

Supervisor Mitchell knew this question was offensive or unwelcome.

Even if these incidents constituted sex-based harassment, no reasonable juror could

conclude that three incidents over a multi-year period were so severe and pervasive as to

constitute a hostile work environment.[44]  And no reasonable juror could find these three

incidents support Plaintiff Long's constructive discharge claim.

In her summary judgment opposition, Plaintiff submits an unsworn declaration

stating that Hernandez "engage[d] in a pattern of intimidation and retaliatory practices that

was supported by leadership and management."[45]  However, Plaintiff cannot rest on

conclusory allegations to resist summary judgment.  She must set forth "specific facts"

creating a material issue for trial.  She has failed to do so.[46]

Because Plaintiff's hostile work environment claims fails, Plaintiff's argument that

her eventual resignation constitutes constructive discharge fails as well.  To make such a

---

[43] The Court presumes that all facts asserted in affidavits or other evidentiary material by the party opposing summary judgment are true.  *See Hunt v. Cromartie*, 526 U.S. 541, 551 (U.S. 1999).

[44] *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (explaining that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment" and approvingly citing cases granting summary judgment to employers on this basis (internal quotation marks omitted)).

[45] Doc. 29 at 27.

[46] *See Lujan v. Defenders of Wildlife*, 504 U.S 555, 561 (explaining that in response to a summary judgment motion, plaintiff cannot "rest on . . . mere allegations, but must 'set forth' by affidavit or other evidence 'specific facts.'").

claim, a plaintiff must establish both a hostile work environment *and* "something more . . .

working conditions so intolerable that a reasonable person would have felt compelled to

resign."[47]  Because Plaintiff's hostile work environment claim fails, this claim fails as well.

ii.)      Sex Discrimination

Plaintiff alleges that defendants discriminated against her because of her gender.

Because there is no direct evidence of discriminatory intent to support this claim, the Court

applies the *McDonnell Douglas* burden-shifting framework to determine whether a

defendant violated Title VII.[48]  First, a plaintiff must establish a *prima facie* case of sex

discrimination by showing that "(1) she was a member of a protected class; (2) she suffered

an adverse employment action; (3) she was qualified for the position; and (4) she was

treated differently from similarly situated members of the unprotected class."[49]  Plaintiff

may satisfy the fourth requirement by showing that the employment action occurred in

circumstances giving rise to an inference of discrimination.[50]

If a plaintiff is successfully establishes a *prima facie* case, then the burden shifts to

the employer to offer a legitimate, non-discriminatory reason for its action.[51]  If successful,

then the plaintiff must then prove that the employer's reason was mere pretext.[52]

The Plaintiff cannot make a *prima facie* case that the Parma transfer violated Title

VII.  If the transfer was an adverse employment action, Plaintiff has not pointed to any facts

suggesting that Plaintiff's sex was the reason for the transfer.  By her own account, the

---

[47] *Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004).
[48] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).
[49] *Knox v. Neaton Auto Prod. Mfg., Inc.*, 375 F.3d 451, 456–57 (6th Cir. 2004).
[50] *McDonnell Douglas*, 411 U.S. at 802 n. 13.
[51] *Id.* at 457.
[52] *Id.*

Division moved her to allow her and Hernandez to "cool off" following their acrimonious breakup. There is nothing in the record indicating that Defendants moved her because she was a woman. And Plaintiff Long does not produce comparator evidence that similarly-situated men were treated differently.[53]

Even if Plaintiff had a *prima facie* case, Defendants have put forth a legitimate non-discriminatory reason for the move: that Hernandez had obtained a restraining order against Plaintiff.

In response, Plaintiff Long argues that Defendants are liable because the protective order was "fraudulent." Plaintiff seems to mean that it was unreasonable for the Division to believe that Hernandez was afraid of her. But regardless of what evidence supported the court order, a court *did* grant the order.[54] Even if the Division doubted the order's merits, it was still obligated to separate the two. And as Plaintiff said at her deposition, the reason for moving her, rather than Hernandez, was that he had on-site management responsibilities and Plaintiff did not.[55]

Plaintiff also cannot claim that Defendants' issuance of the August 28,2017, pre-disciplinary notice is actionable under Title VII. Mere warnings about potential discipline do not qualify as adverse employment actions.[56] Thus, Plaintiff's Title VII and Ohio-law sex discrimination claims fail.

---

[53] In her deposition, Plaintiff mentions an incident in which a female colleague had complained about a male employee and the Division moved the male employee. Doc. 20-39 at 39. However, that Plaintiff was treated differently from other *female* employees who had complained about harassment does not satisfy her *prima facie* burden.

[54] Doc. 20-13.

[55] Doc. 20-39 at 19. Further, Paster states that it is city policy to move the individual against whom the protective order is directed in situations where both parties are city employees. *See* Doc. 25-1 at 42.

[56] *See Melton v. U.S. Dep't of Labor*, 373 F. App'x 572, 577 (6th Cir. 2010) (holding that under both the Transportation Act and Title VII, a warning letter does not constitute a materially adverse employment action).

C.    The Court Grants Summary Judgment to Defendants on Plaintiff's Retaliation Claim

Plaintiff claims that Defendants retaliated against her for complaining about workplace sexual harassment by transferring her to Parma.  To maintain a retaliation claim, a plaintiff must show: "1) that she engaged in activity protected by Title VII; 2) that she was the subject of adverse employment action; and 3) that there is a causal link between her protected activity and the adverse action of her employer."[57]  If a plaintiff makes such a showing, then the employer must articulate a nondiscriminatory reason for its action.[58]  If the employer succeeds, then the burden shifts back to the plaintiff to show the employer's reason was a pretext for retaliation.[59]

It is possible, although improbable, that a reasonable juror could find that Defendants transferred Plaintiff to Parma because she complained to Frances Paster about alleged sexual harassment.  Paster's testimony and Plaintiff's own emails suggest that the July 24, 2017, complaint was about an "abuse of power"—that Hernandez had "put an employee in the middle of a situation such as that."[60]  This allegation does not implicate Title VII. However, Plaintiff testified that she also discussed Deborah Mitchell's allegedly improper sexual comments.  These comments conceivably implicate Title VII's protections against a hostile working environment. Taking Plaintiff's testimony as true and making all reasonable inferences in her favor, she shows a *prima facie* retaliation case.[61]

---

[57] *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986).
[58] *Adamov v. U.S. Bank Nat'l Ass'n*, 681 F. App'x 473, 477 (6th Cir. 2017).
[59] *Id.*
[60] Doc. 20-9.
[61] The close temporal proximity between Plaintiff's July 24 complaint and the July 26 transfer could sustain the inference that the complaint and transfer were causally connected.  *See Adamov*, 681 F. App'x at 478 (one-month difference between complaint and action established causation "on the basis of temporal proximity alone").

The burden then requires Defendants to articulate a legitimate, nondiscriminatory reason for the transfer.  Here, Defendants state that the reason for the transfer was that Hernandez had obtained a civil protection order against Plaintiff Long.  Plaintiff said the same in her EEOC charge.[62]

Because Defendants had come forward with a non-discriminatory explanation, the burden shifts back to Plaintiff to show that this reason was pretextual.  Plaintiff has not met this burden, because there are no record facts suggesting that Defendants' stated reason was pretext for retaliation.  Thus, Plaintiff's claim fails.

**D.    The Court Grants Summary Judgment to Defendants on Plaintiff's Breach of Contract Claim**

Plaintiff claims that Defendants breached an implied contractual obligation to maintain a harassment-free workplace by allowing Hernandez to harass her.  She bases this claim on the anti-harassment policy in the City's employee handbook.[63]

However, Ohio courts have "generally taken the position that company manuals and handbooks, alone, are insufficient to create implied contracts of employment."[64]  Thus, Plaintiff's breach of contract claim fails.

**E.    The Court Grants Defendants Summary Judgment on Plaintiff's Negligent Hiring, Supervision, and Retention Claims**

Plaintiff alleges that Defendants negligently supervised and retained Hernandez, allowing him to harass her.  To prevail on a negligent supervision or retention claim,

---

[62] *See* Doc. 20-12 ("Respondent decided to transfer me from my department to another department because the harasser had filed a restraining order against me.").

[63] *See* Docs. 20-39 at 37; 20-16.

[64] *Kramer v. Med. Graphics Corp.*, 710 F. Supp. 1144, 1145 & n.2 (N.D. Ohio 1989) (collecting cases).  *See also*
39 *Ohio Jur. 3d Employment Relations* § 45 ("[E]mployee handbooks generally do not constitute an employment contract.").

Plaintiff must show: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries, and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries.[65]

There is no evidence that Defendants knew of any alleged misconduct before July 24, 2017, when Plaintiff complained to Frances Paster regarding the personal mail delivery.[66]  Further, Paster states (and Plaintiff does not contest) that she immediately responded by telling Hernandez to handle any personal business outside the workplace.[67] Plaintiff does not identify any other incidents after this date, nor does she suggest that Hernandez victimized anyone else before this incident.[68]  Thus, this claim also fails.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment.


IT IS SO ORDERED.


Dated:  February 7, 2019                    s/       *James S. Gwin*
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE

---

[65] *Sygula v. Regency Hosp. of Cleveland E.*, 2016-Ohio-2843, ¶ 35, 64 N.E.3d 458, 471
[66] At his deposition, Hernandez stated that his last disciplinary incident was in 1998, for misusing sick leave. Doc. 24-1 at 56.
[67] Doc. 25-1 at 21.
[68] *See* Doc. 20-39 at 38 ("Q: You are not claiming [Hernandez] victimized other people? A: No.").